**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

JOY D. CURRINGTON,                          :

      Plaintiff,                          :

vs.                                         :        CA 14-0306-C

CAROLYN W. COLVIN,                          :
Acting Commissioner of Social Security,
                                   :

      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 20 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the February 4, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to degenerative disc disease of the lumbar spine, peripheral edema, peripheral neuropathy, hypertension, morbid obesity, and borderline intellectual functioning. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.**
>
> **2.      The claimant has not engaged in substantial gainful activity since June 12, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> **3.      The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, peripheral edema, peripheral neuropathy, hypertension, morbid obesity, and borderline intellectual functioning. (20 CFR 404.1520(c) and 416.920(c)).**
>
> .      .      .
>
> **4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .      .      .
>
> **5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can frequently lift and carry up to 10 pounds. She can sit for one hour at one time before needing a change of position of at least five minutes before returning to the sitting position, she can stand or walk for approximately 30 minutes at one time before needing to sit for at least five minutes before returning to either standing or walking, and work could continue through the position change. During regularly scheduled breaks and lunch, she needs to elevate her legs to at least as high as chair height or straight out using a chair or box, but not specialized medical equipment, to prop up the legs. She can occasionally push and pull leg controls and frequently push and pull arm controls. She can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. She cannot climb ropes, ladders, or scaffolding; work at unprotected heights; work around dangerous machinery; or operate automotive equipment. She can perform simple, routine, repetitive tasks. She can occasionally interact with the public, co-workers, and supervisors. She can occasionally adapt to changes in**

the work setting. She can maintain attention and concentration for up to two hours at a time.

.       .       .

As for the claimant's physical impairments, she was treated in October 2008, October 2009, and November 2010 at Providence Family Physician[s], where she was diagnosed with hypertension and obesity and prescribed clonidine. The minimal treatment notes indicate that the clonidine helped to control her blood pressure, and her other examination findings were essentially normal. In November 2011, she underwent a consultative examination performed by Dr. Sherman. She complained of lower back pain, swelling in her legs and feet, and shortness of breath with lots of activity. Examination findings indicated the presence of hypertension and obesity. The examination revealed she had a full range of motion in all her extremities and her back, despite her complaints of pain in her back on full extension and full flexion. Though her back had lost some of its lordotic curve due to her obesity, it was devoid of spasm or deformity. The other examination findings were all essentially normal, including gait, station, ability to squat without difficulty, ability to heel-to-toe walk, motor skills, negative atrophy, seated leg raise results, and intact gross and fine manipulation. Dr. Sherman diagnosed the claimant with morbid obesity, low back pain caused by her obesity, hypertension, peripheral edema caused by her hypertension, constipation, and a limited education/slow learner.

From December 2011 to February 2013, the claimant was treated at Victory Health Center for various complaints and follow-ups. In December 2011, she presented with complaints of high blood pressure, and treatment notes indicated she was not regularly checking her blood pressure, had no regular exercise program, and had no diet. An examination revealed hypertension and obesity, but otherwise normal results, and the claimant was diagnosed with hypertension, pedal edema, and morbid obesity. In January 2012, the claimant presented for follow-up treatment and the examination revealed obesity and high normal blood pressure but otherwise produced essentially normal findings. The claimant was diagnosed with morbid obesity, multiple joint pains, and hypertension. In February 2012, she presented with complaints of swelling, shortness of breath, and hypertension. An examination produced findings of obesity and hypertension, but was otherwise normal. She was diagnosed with hypertension, constipation, and morbid obesity. A March 2012 follow-up examination was accompanied by complaints of some numbness and pain; an examination again produced findings of obesity and hypertension, but was normal otherwise, and the claimant was diagnosed with hypertension. In July 2012, the claimant complained of tingling in her hands, and an examination produced findings of obesity and hypertension, but was relatively normal otherwise. The claimant was diagnosed with morbid obesity, hypertension, and carpal tunnel syndrome. A December 2012 treatment found the claimant complaining

3

that her right arm was stiff and her knee was "locking up." An examination revealed obesity, hypertension, degenerative changes in her left knee, and bilateral crepitus in her knees, but it was essentially normal for other systems. She was diagnosed with degenerative joint disease of her "knees," neuropathy, hypertension, and morbid obesity. The notes indicate that Lyrica was not ordered for her neuropathy. In February 2013, the claimant complained of chronic low back pain. An examination revealed obesity, hypertension, degenerative changes in the claimant's lumbar spine due to her obesity, and only mild degenerative changes in the claimant['s] cervical spine. Other systems were normal. The claimant was diagnosed with degenerative disc disease of her lumbar spine, hypertension, morbid obesity, and neuropathy.

The objective findings and the claimant's admitted abilities and activities do not support the allegations she is disabled by her degenerative disc disease of the lumbar spine, peripheral edema, peripheral neuropathy, hypertension, or morbid obesity, of a combination thereof. Despite complaints, diagnoses, and treatment, the claimant's myriad of examination findings throughout the record were essentially normal. The "non-normal" examination findings revolved primarily around the claimant's hypertension and obesity, of which the hypertension was admittedly "helped" by medication, and her obesity, which involved the claimant's refusal to follow doctors' recommendations to lose weight. The recent diagnoses of degenerative joint disease of her knees and degenerative disc disease of her lumbar spine are undermined by her admitted and indicated activities such as dusting, cleaning, washing dishes, cooking, ironing, and doing laundry.

Nevertheless, the undersigned acknowledges that the claimant's physical symptomology can reasonably be expected to cause some functional limitations and, accordingly, has limited the claimant to less than the full range of sedentary work. The limitations to only frequently lifting and carrying up to 10 pounds; being able to change positions between sitting and standing throughout the workday; being able to elevate her feet during breaks and lunch; only occasionally pushing and pulling leg controls; only frequently pushing and pulling arm controls; only occasionally stooping, kneeling, crouching, crawling, balancing, and climbing ramps and stairs; never climbing ropes, ladders, or scaffolding; and never working at unprotected heights, around dangerous machinery, or operating automotive equipment, all accommodate her degenerative disc disease of the lumbar spine, hypertension, and morbid obesity, as well as any potential medication side effects. The claimant's peripheral edema and peripheral neuropathy are accommodated by the limitation to sedentary work, the ability to change positions, and the ability for the claimant to elevate her legs during breaks and at lunch.

As for opinion evidence regarding the claimant's physical impairments, as part of his consultative examination, Dr. Sherman opined that the claimant's obesity was the cause of her lower back pain and made her

4

intolerant to activity, and her hypertension and obesity were the cause of the edema. Dr. Sherman noted that her six years of employment with Wendy's as a cashier proved she can count money and handle at least fast food duties. His ultimate opinion was that the claimant can do some forms of fast food jobs or some restrictive-activity jobs. Dr. Sherman's opinion is consistent with the medical evidence of record, which showed essentially normal examination findings throughout the period of adjudication; consistent with his own examination findings, which were essentially normal except for morbid obesity and hypertension; and consistent with the claimant's admitted activities and abilities, which include performing household chores and the ability to lift 15 pounds. Accordingly, the undersigned gives Dr. Sherman's opinion great weight.

In March 2013, Chris Corsentino, D.C., a chiropractor, completed a clinical assessment of pain form (CAP), and a physical capacities evaluation form (PCE). In the CAP, Chiropractor Corsentino noted that pain was present in the claimant to such an extent as to be distracting to adequate performance of daily activities or work; physical activity increases pain to the extent that medication and/or bed reset is necessary; and prescribed medication will severely limit the patient's effectiveness due to distraction, inattention and drowsiness. In the PCE, Chiropractor Corsentino opined that the claimant can walk for zero hours total at one time and for a total of zero hours in an eight-hour workday; can stand for one hour at a time and for a total of two hours in an eight-hour workday; can sit for one hour at a time and for a total of three hours in an eight-hour workday; can occasionally lift and carry up to 10 pounds; can use her bilateral hands for simple grasping and fine manipulation but not for the pushing and pulling of arm controls; cannot use her feet for the pushing and pulling of leg controls; can occasionally reach but cannot bend, squat, crawl, or climb; is mildly restricted in activities involving being around moving machinery and exposure to marked changes in temperature and humidity; and is mildly restricted in activities involving exposure to dust, fumes, and gases. Chiropractor Corsentino noted that the patient has an antalgic gait, has difficulty with lumbar movement, and is very limited due to pain. He concluded that the claimant is currently unable to work and that her limitations would continue for more than 12 months. *Although Chiropractor Corsentino is not considered to be an acceptable medical source for medical opinion purposes, the undersigned has considered his opinion under 20 CFR 404.1527(d), 20 CFR 416.913(d), and SSR 06-03p. The undersigned gives little weight to his opinion. His opinion is not supported by the objective testing performed by Dr. Sherman in Exhibit 3F and set forth above. Chiropractor Corsentino's opinion is also not supported by the treatment records from Victory Health, in which the claimant demonstrated essentially normal examination findings with regard to her systems, except for repeated diagnoses of obesity and hypertension. Finally, Chiropractor Corsentino's opinion does not accord with the claimant's admitted abilities and activities, which include performing housework such as laundry, dishes,*

*and dusting; cooking simple meals; caring for her son; and shopping for two to four hours at one time twice per month.*

.        .        .

**6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.        .        .

**7.      The claimant was born on April 19, 1974 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.        .        .

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of not disabled would be directed by Medical-Vocational Rule 201.24. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as break lining coder ((DOT) Code 574.685-010), a sedentary and unskilled job with approximately 78,000 positions in the national economy and 2,000 in Alabama; a final assembler (DOT Code 713.687-018), a sedentary and unskilled job with approximately 230,000 positions in the national economy and 3,000 in Alabama; and a stuffer (DOT Code 731.685-014), a sedentary and unskilled job with approximately 342,000 positions in the national economy and 5,000 in Alabama.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained

in the DOT, except for the position change detailed in the residual functional capacity. The vocational expert testified that the claimant's need to change positions would only minimally erode (10 percent) the occupational based indicated by the DOT and its companion publications. The vocational expert explained that she based her testimony on her 24 years of experience in vocational rehabilitation performing both formal and informal job analyses. The undersigned finds [] the vocational expert's explanation to be satisfactory.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of not disabled is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 12, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 12, 13, 16-17, 18-20, 23, & 23-24 (internal citations and quotation marks omitted; most emphasis in original but some added).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. An ALJ, in turn,

uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and

> (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Security*, 457 Fed.Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that she cannot perform her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.*; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Finally, but importantly, although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those sedentary, unskilled jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to

---

[2]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Currington asserts one reason why the Commissioner's decision to deny her benefits is in error (*i.e.*, not supported by substantial evidence): (1) the ALJ failed to properly evaluate the opinion of a non-accepted medical source regarding the limitations resulting from her diagnosed severe impairments of degenerative disc disease of the lumbar spine, peripheral edema, peripheral neuropathy, hypertension, and morbid obesity. There can be no question but that Chris Corsentino, a chiropractor, completed a physical residual functional capacity evaluation form, as well as a clinical assessment of pain form, on March 5, 2013. On the pain form, Corsentino indicated that plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work, that physical activity increases pain to the extent medication and/or bed rest is necessary, and that the medication plaintiff takes severely limits her effectiveness due to distraction, inattention and drowsiness. (Tr. 250.) The PCE reflects Corsentino's findings that Currington can sit for one hour at a time and for three hours total in an 8-hour workday; she can stand for one hour at a time and for a total of two hours in an 8-hour workday; she cannot walk for any period of time; she can occasionally lift and carry up to 10 pounds; she

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

cannot push and pull arm controls; she cannot use her feet for any repetitive movements; she can occasionally reach but cannot bend, squat, crawl or climb; and she has only mild restrictions in terms of being around moving machinery, exposure to temperature and humidity changes, and exposure to dust, fumes and gases. (Tr. 251.) Corsentino remarked on the PCE that Currington had an antalgic gait and difficulty with lumbar movement due to pain. (*Id*.) Interestingly, however, Corsentino's assessments are unaccompanied by a narrative report (*see* Tr. 250-251) and, indeed, there is absolutely no other evidence in the record generated by Corsentino (*see* Administrative Transcript).

Chiropractors are excluded from the list of "acceptable medical sources" whose opinions are to be considered in determining the existence of an impairment. *See* 20 C.F.R. § 404.1513(a) (2013). However, medical sources who are not "acceptable medical sources" are considered "other sources" and their opinions and evidence may be used "to show the severity" of an impairment and "how it affects [the] ability to work[.]" *See* 20 C.F.R. § 404.1513(d) (chiropractors included in subsection (1)). "Even though a chiropractor's opinions may be considered, 'an ALJ has no duty to give significant or controlling weight to a chiropractor's views.'" *Lucas v. Colvin,* 2014 WL 358724, *8 (N.D. Ala. Jan. 31, 2014), quoting *Miles v. Social Security Administration,* 469 Fed.Appx. 743, 745 (11th Cir. Mar. 15, 2012).

Social Security Ruling 06-03p clearly provides that the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d) can be applied to opinion evidence from medical sources who are not "acceptable medical sources," including the following factors: (1) how long the source has known the claimant and how frequently the source has seen the claimant; (2) how consistent the source's opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support the opinion; (4) how well the

source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the source's opinion. *Id*. The ruling goes on to explain that not every factor listed will apply in every case. *Id*. And, finally, the ruling explains that the "adjudicator generally should explain the weight given to opinions from [] 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning . . . ." *Id*.

With these principles in mind, the undersigned considers plaintiff's sole argument that the ALJ failed to properly evaluate the opinion of a non-accepted medical source, Chris Corsentino, D.C. "regarding the limitations resulting from the Plaintiff's diagnosed severe impairments of degenerative disc disease of the lumbar spine, peripheral edema, peripheral neuropathy, hypertension, and morbid obesity." (Doc. 11, at 1-2; *see also id.* at 2 (arguing the ALJ "erred in assigning little weight to the opinion of Chris Corsentino, D.C., who indicated limitations on a clinical assessment of pain form and a physical capacities evaluation that would result in a conclusion that the Plaintiff could not perform any work in the national economy.").) The plaintiff is correct in noting that given the diagnoses by acceptable medical sources of degenerative disc disease of the lumbar spine, peripheral edema, peripheral neuropathy, and morbid obesity, that Corsentino "could opine regarding the severity of [] [her] impairments and [their] effects on her ability to work[]" (Doc. 11, at 4); however, her suggestion that the ALJ did not give Corsentino's opinions "weight" (*id.* at 5) is simply incorrect inasmuch as the ALJ set forth the entirety of Corsentino's pain assessment and physical capacities

evaluation, afforded those opinions "little weight[,]" and set forth several reasons for

giving Corsentino's opinions little weight (Tr. 20).[4]

> His opinion is not supported by the objective testing performed by Dr.
> Sherman in Exhibit 3F and set forth above. Chiropractor Corsentino's
> opinion is also not supported by the treatment records from Victory
> Health, in which the claimant demonstrated essentially normal
> examination findings with regard to her systems, except for repeated
> diagnoses of obesity and hypertension. Finally, Chiropractor Corsentino's
> opinion does not accord with the claimant's admitted abilities and
> activities, which include performing housework such as laundry, dishes,
> and dusting; cooking simple meals; caring for her son; and shopping for
> two to four hours at one time twice per month.

(*Id.* (internal citations omitted).) And while the ALJ did not elaborate upon her first

reason for rejecting Corsentino's opinions, she committed no error inasmuch as in

discussing the evidence in other portions of her decision she ensured that this Court

could follow her reasoning in this regard. *See* SSR 06-03p ("[T]he adjudicator generally

should explain the weight given to opinions from [] 'other sources,' or otherwise ensure

that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer

to follow the adjudicator's reasoning . . . .").  Indeed, the ALJ correctly summarized Dr.

Sherman's consultative examination findings (Tr. 18 ("In November 2011, she

underwent a consultative examination performed by Dr. Sherman. She complained of

lower back pain, swelling in her legs and feet, and shortness of breath with lots of

activity. Examination findings indicated the presence of hypertension and obesity. The

examination revealed she had a full range of motion in all her extremities and her back,

despite her complaints of pain in her back on full extension and full flexion. Though her

---

[4]     In addition, her suggestion that Corsentino "linked" his limitations to all
of the severe impairments found by the ALJ is simply inaccurate. Indeed, the PCE form
completed by Corsentino makes clear that the source of all limitations noted consisted
of plaintiff's "antalgic gait" and "difficulty with lumbar movement[]" (Tr. 251), that is,
difficulties solely related to plaintiff's degenerative disc disease of the lumbar spine.

back had lost some of its lordotic curve due to her obesity, it was devoid of spasm or deformity. The other examination findings were all essentially normal, including gait, station, ability to squat without difficulty, ability to heel-to-toe walk, motor skills, negative atrophy, seated leg raise results, and intact gross and fine manipulation." (internal citations omitted)); *compare id. with* Tr. 219 ("EXT: There was no cyanosis, clubbing, or edema currently. There were no obvious varicosities in her legs or feet. She had full ROM in all of her extremities. BACK: There was no spasm or deformity. She does have some loss of the lordotic curve. This is also probably due to her weight. She had full ROM in her back, but complained with full extension and full flexion. LOCOMOTOR: She has a widened but normal gait. Normal station. She was able to squat without difficulty. Heel toe walk was normal. NEUROLOGICAL: She has good motor strength, 5/5. Sensory was normal. Reflexes were 3/4, grips were 5/5. Romberg was negative. Seated leg raise was negative. Atrophy was negative. Manipulation fine and gross was intact.")), as well as the treatment records from Victory Health Center (Tr. 18-19 ("In December 2011, she presented [to Victory Health Center] with complaints of high blood pressure, and treatment notes  indicated she was not regularly checking her blood pressure, had no regular exercise program, and had no diet. An examination revealed hypertension and obesity, but otherwise normal results, and the claimant was diagnosed with hypertension, pedal edema, and morbid obesity. In January 2012, the claimant presented for follow-up treatment and the examination revealed obesity and high normal blood pressure but otherwise produced essentially normal findings. The claimant was diagnosed with morbid obesity, multiple joint pains, and hypertension. In February 2012, she presented with complaints of swelling, shortness of breath, and hypertension. An examination produced findings of obesity and hypertension, but was otherwise normal. She was diagnosed with hypertension, constipation, and morbid

obesity. A March 2012 follow-up examination was accompanied by complaints of some numbness and pain; an examination again produced findings of obesity and hypertension, but was normal otherwise, and the claimant was diagnosed with hypertension. In July 2012, the claimant complained of tingling in her hands, and an examination produced findings of obesity and hypertension, but was relatively normal otherwise. The claimant was diagnosed with morbid obesity, hypertension, and carpal tunnel syndrome. A December 2012 treatment found the claimant complaining that her right arm was stiff and her knee was 'locking up.' An examination revealed obesity, hypertension, degenerative changes in her left knee, and bilateral crepitus in her knees, but it was essentially normal for other systems. She was diagnosed with degenerative joint disease of her 'knees,' neuropathy, hypertension, and morbid obesity. The notes indicate that Lyrica was not ordered for her neuropathy. In February 2013, the claimant complained of chronic low back pain. An examination revealed obesity, hypertension, degenerative changes in the claimant's lumbar spine due to her obesity, and only mild degenerative changes in the claimant['s] cervical spine. Other systems were normal. The claimant was diagnosed with degenerative disc disease of her lumbar spine, hypertension, morbid obesity, and neuropathy."); *compare id. with* Tr. 230-246 & 252-255 (Dr. Lightfoot's treatment notes from Victory Health Center reflect not only the items noted by the ALJ but, as well, consistently reflect that plaintiff consistently was alert and in no acute distress on physical examination and that the family practitioner consistently counseled Currington to diet, exercise, lose weight, and comply with all medications)). The foregoing evidence produced by two examining physicians, along with plaintiff's testimony regarding her daily activities (Tr. 35-36 (plaintiff's testimony that she cares for her son, fixes him hotdogs or other simple meals, washes dishes, puts the clothes in the "laundry," and does a "little" dusting)), stands in stark contrast—as

14

the ALJ notes (Tr. 20)—to the severe limitations found by a chiropractor on two forms completed on March 5, 2013 (*see* Tr. 250-251), forms that "stand alone" without any treatment records from the chiropractor supporting the limitations set forth on those forms (*see* Administrative Transcript).[5] In light of this infirmity, "the court is unable to assess whether the chiropractor's [findings/limitations] are reliably supported by his own treatment records." *Tankersley v. Colvin,* 2014 WL 5092219, *5 (M.D. Ala. Oct. 9, 2014); *compare id. with, e.g.,* 20 C.F.R. § 404.1527(d)(3) (in considering opinion evidence from an "other" source, one key factor is "the degree to which the source presents relevant evidence to support the opinion"). Moreover, given the clear indication that the CAP and PCE were based solely upon plaintiff's lower back difficulties (*see* Tr. 251) and Corsentino's failure to set forth any specific range of motion limitations (*see id.*), it is as impossible for this Court—as it was the ALJ—to find that plaintiff's degenerative disc disease of the lumbar spine would produce the severe limitations set forth by the chiropractor.[6] Thus, the ALJ did not err in affording Corsentino's RFC opinion and clinical assessment of pain "little" weight.

Because substantial evidence of record supports the Commissioner's determination that Currington can perform the physical and mental requirements of a reduced range of sedentary work as identified by the ALJ (*see* Tr. 16-17; *compare id. with* Tr. 35-36, 186-192, 209-210, 212-216, 218-220, 230-243 & 252-257), and plaintiff makes no

---

[5] Dr. Sherman's examination findings are simply not consistent with, nor do they support, the limitations set forth by Corsentino (*compare* Tr. 218-220 *with* Tr. 250-251), plaintiff's arguments to the contrary notwithstanding (*see* Doc. 11, at 4).

[6] Another factor detracting from Corsentino's opinions is the fact that the record evidence fails to reveal when the chiropractor began treating plaintiff and how often Corsentino saw Currington. *See* 20 C.F.R. §§ 404.1527(d)(1) & 416.927(d)(1) (factor relevant to opinion evidence from an "other" source is "how long the source has known the claimant and how frequently the source has seen the claimant").

argument that this residual functional capacity would preclude her performance of the sedentary jobs identified by the VE during the administrative hearing (*compare* Doc. 11 *with* Tr. 50-52), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 10th day of February, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**